**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JO ANNE PEPITONE,<br>         Plaintiff,<br><br>    v.<br><br>TOWNSHIP OF LOWER MERION,<br>TOWNSHIP OF LOWER MERION POLICE<br>DEPARTMENT, and POLICE<br>SUPERINTENDENT MICHAEL J.<br>MCGRATH,<br>         Defendants. | CIVIL ACTION<br><br><br><br><br>NO. 19-1447 |

## MEMORANDUM

**Joyner, J.**                                        **December 19, 2019**

Presently before the Court are Plaintiff's First Amended Complaint ("FAC"), (FAC, Doc. No. 9); Defendants' Partial Motion to Dismiss the FAC for failure to state a claim under Rule 12(b)(6), (Defs. Partial Motion to Dismiss, Doc. No. 12); and Plaintiff's Response thereto, (Pl. Response, Doc. No. 13). For the reasons that follow, the Motion will be granted in part and denied in part.

## Factual Background

Plaintiff Jo Anne Pepitone brings claims against the Township of Lower Merion ("Township"), the Township of Lower Merion Police Department ("LMPD"), and Michael J. McGrath ("McGrath") – a police department superintendent – in his individual capacity. (Doc. No. 9 ¶1; Doc. No. 13 at 1-2.)

Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 ("Title VII") 42 U.S.C. § 2000(e), et seq.; 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment; and the Pennsylvania Human Relations Act ("PHRA") 43 P.S. § 951 et seq. In response to Defendants' contention that LMPD and the Township are a single entity for purposes of § 1983 liability, (Doc. No. 12-1 at 21), Plaintiff, without qualification, "agrees to dismiss her claims against LMPD . . . .," (Doc. No. 13 at 2.) Accordingly, we treat LMPD and the Township as a single entity and grant Defendants' Partial Motion to Dismiss as to LMPD.

Plaintiff alleges that she has worked for the Township for several years in various roles. (Doc. No. 9 ¶11-12.) She contends that "there have been numerous sexually charged rumors circulating throughout the police department . . . . [that] have contributed to creating a sexually hostile and gender discriminatory hostile work environment," (id. ¶15), that the Defendants have condoned or ignored, (id. ¶17). Plaintiff also argues that the Defendants were, or should have been, aware of the alleged discriminatory culture, (id. ¶¶17, 22). Plaintiff states that, when she spoke with "multiple police department supervisors about the ongoing rumors about her," (Doc. No. 13 at 6), they told her "'that is how this place works,'" (Doc. No. 9 ¶18(s).)

According to Plaintiff, LMPD conducted an investigation into whether Plaintiff was having an inappropriate relationship with another officer, (id. ¶18(g), (n)), and that, "[s]hortly thereafter," (id. ¶18(p)), LMPD transferred Plaintiff to a "less senior and less prestigious," (id. ¶18(p)), platoon, (id.), even though Plaintiff was told that "she had done nothing wrong, this was not a discipline matter and there were no policy violations," (id. ¶18(o)). In contrast, Plaintiff alleges, LMPD apparently did not discipline a male officer for having a relationship with a female subordinate, (id. ¶18(e)). Plaintiff seems to suggest that such reassignment was punitive, as she states that, in the past, other officers have "had their platoon assignments changed . . . [as a result of] performance deficiencies . . . ." (Id. ¶18(q).)

Then, on April 3, 2018, Plaintiff reports that she "emailed a sexual harassment, discrimination and retaliation complaint to McGrath [and others] . . . ." (Id. ¶23.) On April 17, 2018, Plaintiff alleges that she "met with an investigator to discuss her complaint." (Id. ¶24.) Plaintiff states that, on April 23, 2018 – after submitting and discussing with an investigator her complaint – she "received her first negative evaluation in her 10 years at LMPD." (Id. ¶26.) Plaintiff claims that she then "filed a sexual harassment and retaliation complaint with the EEOC," (id. ¶31), and that LMPD was aware of the EEOC complaint

on or before June 2018, (id.). Plaintiff reports that the Township and LMPD investigated the claims underlying her complaint. (Id. ¶32-37.) Plaintiff claims that, in the meeting where Defendants reviewed with Plaintiff the results of the investigation stemming from her complaint, "[Defendant] McGrath told Pepitone that she was being placed on a performance improvement plan . . . ." (Id. ¶38.)

## **Analysis**

### *Jurisdiction*

Subject matter jurisdiction in this case is proper under 28 U.S.C. §§ 1331 and 1367. This Court has personal jurisdiction over the Defendants, as the Defendants have consented to personal jurisdiction in this forum by litigating the merits without contesting personal jurisdiction. Richard v. U.S. Airways, Inc., 2011 WL 248446, at *1 (E.D. Pa. Jan. 26, 2011) ("Personal jurisdiction is a right that may be waived . . . . a party may consent to personal jurisdiction if he or she 'actually litigates the underlying merits . . . .'"). Plaintiff alleges – and Defendants do not contest in their Partial Motion to Dismiss the FAC – that Plaintiff has exhausted all administrative remedies under Title VII and the PHRA. (Doc. No. 9 ¶3.)

*Standard Under Fed. R. Civ. P. 8(a)(2)*

Rule 8(a)(2) states that "[a] pleading that states a claim for relief must contain . . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a)(2). See also Rosh v. Gold Standard Café at Penn, Inc., 2016 WL 7375014, at *2 (E.D. Pa. Dec. 19, 2016).

*Standard for Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)*
*for Failure to State a Claim*

Under Rule 12(b)(6), "[t]he Court may grant a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) if, 'accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief.'" Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007).

In determining motions to dismiss for failure to state a claim, Courts should consider only "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010). See also Witasick v. Minnesota Mut. Life Ins. Co., 803 F.3d 184, 192 (3d Cir. 2015).

To survive a motion to dismiss under 12(b)(6), the complaint must contain sufficient factual matter accepted as true "to state a claim that is plausible on its face." _Ashcroft v. Iqbal_, 556 U.S. 662, 697 (2009) (_quoting_ _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544, 570 (2007)). Courts are to take as true all of the factual allegations in the complaint and the reasonable inferences that can be drawn from those facts. _Witasick_, 803 F.3d at 192; _Ethypharm S.A. Fr. v. Abbott Laboratories_, 707 F.3d 223, 225, n.1 (3d Cir. 2013).

Lastly, Courts should disregard "legal conclusions and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." _Ethypharm_, 707 F.3d at 231, n.14.

_Count I – Sexual Harassment Under Title VII and the PHRA Against the Township_

In their Partial Motion to Dismiss, Defendants do not seek dismissal of Count I. (Doc. No. 12-1; Doc. No. 12-2.) Thus, we do not address Count I.

_Count II – Sex Discrimination Under Title VII and the PHRA Against the Township_

**I.   Claim Under Title VII**

In their briefs, the parties misstate the standard applicable to a Title VII sex discrimination claim at the motion to dismiss stage. Instead, on a motion to dismiss under Rule 12(b)(6), a plaintiff bringing a Title VII sex discrimination

claim need only plead "a short and plain statement showing a right to relief, 'not a detailed recitation of the proof that will in the end establish such a right.'" <u>Gavura v. Pennsylvania State House of Representatives</u>, 55 F. App'x 60, 63 (3d Cir. 2002) ("[A]n employment discrimination complaint need not include [specific facts establishing a prima facie case of discrimination under the framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ] and instead must contain only a short and plain statement of the claim showing that the pleader is entitled to relief.") (alteration in original) (internal quotations omitted); <u>Astle v. Elwyn, Inc.</u>, 2002 WL 32130103, at *1 (E.D. Pa. Dec. 20, 2002) ("Complaints in employment discrimination cases must satisfy Fed.R.Civ.P. 8(a), which requires only a short and plain statement showing a right to relief . . . . Thus, an employment discrimination complaint [alleging violations of Title VII] need not include specific facts establishing a prima facie case of discrimination.").

In <u>Gavura</u>, 55 F. App'x 60, the Third Circuit held that when a female plaintiff on a motion to dismiss alleged discrimination stemming from: (1) receiving no benefits; (2) receiving a comparatively lower salary; and (3) facing a requirement to pay certain expenses out-of-pocket – while male employees did not

face such treatment – the plaintiff sufficiently plead sex discrimination under Title VII. Id. at 63–64.

Noting the lenient standard for notice pleading, the Third Circuit held that the lower court should have denied the motion to dismiss even though some female employees were not subject to discriminatory treatment. Id. at 64 ("While these allegations admittedly are not strong, particularly in light of other allegations in the complaint indicating that other female employees . . . did receive the benefits denied to Gavura, they at least are sufficient to give appellees fair notice of what her claim is and the grounds upon which it rests. As Gavura's allegations meet our lenient standards of notice pleading, the trial court erred in granting appellees' motion to dismiss Gavura's sex discrimination claim.").

Here, Plaintiff alleges that the Township conducted an investigation into whether Plaintiff had a romantic relationship with a subordinate, (Doc. No. 9 ¶18(n)), and transferred her to a less prestigious platoon soon afterwards, (id. ¶18(p)), despite that the Township did not discipline a male officer who had a relationship with a female subordinate, (id. ¶18(e)). As in Gavura, 55 F. App'x 60, Plaintiff alleges that the Township treated Plaintiff differently than a similarly situated male employee. See id. at 63–64. See also Astle, 2002 WL 32130103, at *1. Accordingly, under "our lenient standards of notice pleading

8

. . . .," Gavura, 55 F. App'x at 64, Plaintiff's allegations are sufficient. Therefore, we deny Defendants' Partial Motion to Dismiss as to Count II on the Title VII sex discrimination claim.

## II.  Claim Under the PHRA

Both Plaintiff and Defendants argue that the PHRA sex discrimination claim mirrors the Title VII sex discrimination claim. (Doc. No. 12-1 at 4, n.1; Doc. No. 13 at 9.) Accordingly, because we deny Defendants' Partial Motion to Dismiss Count II as to the Title VII claim, we deny Defendants' Partial Motion to Dismiss Count II under the PHRA.

### Count III – Retaliation Under Title VII and the PHRA Against the Township and McGrath

Plaintiff brings retaliation claims against the Township under Title VII and the PHRA and against McGrath as an aider and abettor under the PHRA. (Doc. No. 9 ¶62.)

## I.  Claim Under Title VII Against the Township

Again, the parties misstate the standard for a Title VII retaliation claim on a Rule 12(b)(6) motion to dismiss. Instead, on a Rule 12(b)(6) motion to dismiss, a plaintiff bringing a Title VII retaliation claim need only plead "facts sufficient to give appellees fair notice of the basis for her retaliation claim." Gavura, 55 F. App'x at 64–65 ("[A]s the Supreme Court made clear . . . , the McDonnell Douglas standard is an

evidentiary standard, not a pleading requirement . . . .
Accordingly, plaintiff was not required to plead facts
establishing that she engaged in protected activity or that she
complained to anyone who was in a position to act upon her
complaints in order to survive a Rule 12(b)(6) motion.").

In Gavura, 55 F. App'x 60, the Third Circuit held that the
plaintiff's Title VII retaliation claim survived a Rule 12(b)(6)
motion to dismiss because the plaintiff's "assertions that she
was discharged shortly after . . . complain[ing] about her
unfair working environment were sufficient to place appellees on
notice that she is pursuing a retaliation claim under Title VII
for which she could be entitled to relief." Gavura, 55 F. App'x
at 64–65.

Even at the more stringent summary judgment stage, the
Third Circuit recently treated "unwarranted negative
evaluations" as an adverse employment action under Title VII.
Patra v. Pennsylvania State Sys. of Higher Educ., 779 F. App'x
105, 107 (3d Cir. 2019) ("[T]he [lower] Court stated that the
plaintiffs had 'fail[ed] to explain what "adverse employment
actions" were taken by Defendants.' . . . . In fact, the
plaintiffs alleged numerous adverse actions in their
counterstatement of facts, including, among many other things,
being . . . given unwarranted negative evaluations . . . .").

Here, Plaintiff alleges that she "received her first negative evaluation in her 10 years at LMPD," (id. ¶26), only a few days after she "emailed a sexual harassment, discrimination and retaliation complaint to McGrath [and others] . . . .," (id. ¶23), and "met with an investigator to discuss her complaint," (id. ¶24). Thus, Plaintiff's allegations sufficiently put Defendants on notice of her Title VII retaliation claim. Accordingly, we find that Plaintiff has successfully plead a retaliation claim under Title VII against the Township. See Gavura, 55 F. App'x at 64–65. We deny Defendants' Partial Motion to Dismiss as to Count III on the Title VII retaliation claim against the Township.

## II. Claim Under the PHRA Against the Township

Defendants contend that the PHRA retaliation claim is analogous to the Title VII retaliation claim. (Doc. No. 12-1 at 9 ("Plaintiff Has Not Alleged a Cognizable Claim of Retaliation Against the Township - (Count III). In order to establish a prima facie case of retaliation under Title VII and the analogous provisions of the PHRA . . . .").) Therefore, because we deny Defendants' Partial Motion to Dismiss the Title VII retaliation claim against the Township, we likewise deny Defendants' Partial Motion to Dismiss the PHRA retaliation claim against the Township.

## III.  Claim Under the PHRA § 955(e) Against McGrath

Plaintiff alleges that McGrath violated the PHRA § 955(e) by aiding and abetting unlawful retaliation. The relevant section of the PHRA states that:

> "It shall be an unlawful discriminatory practice . . . .
> (e) For any person, employer, employment agency, labor organization or employe, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

43 P.S. § 955(e).

Liability under the PHRA § 955(e) only attaches to supervisors. McIlmail v. Pennsylvania, 381 F. Supp. 3d 393, 415 (E.D. Pa. 2019) ("[A]n individual supervisory employee can be held liable under an aiding and abetting/accomplice liability theory pursuant to § 955(e) for his own direct acts of discrimination or for his failure to take action to prevent further discrimination by an employee under supervision . . . . An individual employee may be exposed to liability under the aider and abettor provision only if he acts in a supervisory role because only supervisors can share the discriminatory purpose and intent of the employer . . . required for aiding and abetting.") (collecting cases) (internal citations omitted).

Additionally, there must be an underlying primary violation by the employer. McIlmail, 381 F. Supp. 3d at 415 ("Even if an

individual employee is a supervisor for purposes of aiding and abetting liability under the PHRA, the Plaintiff must show a 'primary violation' by the employer . . . . 'Individual defendants cannot . . . be liable for violations of [§]955(e) if there is no primary violation of the PHRA.'").

Lastly, a plaintiff satisfies the burden at the motion to dismiss stage by alleging that the defendant, as a supervisor, knowingly failed to take steps to remedy retaliation by subordinates. Rosh, 2016 WL 7375014, at *7.

First, Plaintiff claims that McGrath is a "superintendent," (Doc. No. 9 ¶8), "the top ranking police officer in the Township's police department," (Doc. No. 13 at 15), and "the Township's manager and human resources manager," (id. at 5), and that he has subordinates, (Doc. No. 9 ¶53). Defendants do not appear to contest the existence of a supervisory relationship as a matter of law. We find that Plaintiff has sufficiently alleged that McGrath is a supervisor for purposes of PHRA § 955(e) liability. Second, as discussed previously, Plaintiff has sufficiently alleged an underlying retaliatory primary violation by the Township.

Third, Plaintiff asserts that McGrath aided and abetted the Township's alleged retaliation because "McGrath issued her [Plaintiff] a performance improvement plan in the same meeting he was reviewing with her the outcome of the Township's

13

investigation of her discrimination and harassment complaint . .

. . [,] knew about the years of false rumors about Pepitone and

other female officers and turned a blind eye to doing anything

about this ongoing harassing conduct . . . . [and] failed act to

prevent discrimination against Pepitone by Lieutenants Baitinger

and Tucci and others at the police department because of its

retaliatory, sexually harassing and discriminatory practices . .

. . [, and] was aware of other alleged discrimination,

harassment, and retaliation." (Doc. No. 13 at 6, 14; Doc. No. 9

¶¶35, 38, 49-53.) As in Rosh, 2016 WL 7375014, Plaintiff asserts

factual allegations supporting that McGrath knew of the

Township's alleged retaliation, as Plaintiff emailed a

retaliation complaint to McGrath. (Id. ¶23. See also id. ¶¶32-

38.) Plaintiff also contends that McGrath did not take

sufficient steps to remedy the Township's alleged retaliation.

(See id. ¶63; Doc. No. 13 at 6.) Thus, Plaintiff alleges that

McGrath, as a supervisor, was aware of alleged retaliatory

conduct by subordinates and that he failed to take sufficient

steps to address his subordinate's conduct. (See Doc. No. 13 at

6, 14; Doc. No. 9 ¶¶49-53.) Because Plaintiff has sufficiently

plead a violation of the PHRA § 955(e), we deny Defendants'

Partial Motion to Dismiss Count III against McGrath under the

PHRA § 955(e).

14

I. **<u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658 (1978) Claim Under § 1983 Against the Township**

While a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents, a local government may be sued when execution of the local government's policy or custom inflicts the injury. <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 694 (1978). Municipalities have no immunity of their own and cannot adopt the derivative immunity of their officers. <u>Owen v. City of Indep., Mo.</u>, 445 U.S. 622, 638 (1980) ("We hold, therefore, that the municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983.").

There are three main requirements for a local government to be liable under § 1983: (1) its employee's conduct must be pursuant to the local government's law, custom, or policy, <u>Monell</u>, 436 U.S. at 691; (2) its employee's conduct must be either unconstitutional or in violation of a right secured by a federal statute, <u>see</u> <u>id.</u>; and (3) that law, custom, or policy must be unconstitutional or otherwise violate a right secured by federal statute, <u>see</u> <u>id.</u> at 690, 694.

The first issue is whether the alleged misconduct was a part of a law, custom, or policy. A "law, custom, or policy" can

be formal or informal, written or unwritten. <u>See</u> <u>Monell</u>, 436
U.S. at 690-91 ("[L]ocal governments . . . may be sued for
constitutional deprivations visited pursuant to governmental
'custom' even though such a custom has not received formal
approval through the body's official decisionmaking channels.").

A custom may arise in different ways. As is relevant here,
a custom arises when "such practices . . . could well be so
permanent and well settled as to constitute a 'custom or usage'
with the force of law." <u>Monell</u>, 436 U.S. at 691.

In order to sufficiently allege a custom for purposes of §
1983 liability, "[a] plaintiff must identify a custom or policy
and specify what exactly that custom or policy was." <u>Tejada v.
Corr. Officer Dale of Lehigh Cty. Prison</u>, 2018 WL 3688917, at *5
(E.D. Pa. Aug. 3, 2018) ("A complaint fails to sufficiently
plead a <u>Monell</u> policy claim where [it] fails to identify any
specific custom or policy, but instead alleges that the policies
were insufficient in a generic way.") (internal quotations
omitted). <u>See also</u> <u>McTernan v. City of York, PA</u>, 564 F.3d 636,
658 (3d Cir. 2009) ("To satisfy the pleading standard, [the
plaintiff] . . . must identify a custom or policy, and specify
what exactly that custom or policy was."). Additionally, a
"[m]ere assertion of an entitlement to relief, without some
factual 'showing,' is insufficient under Fed.R.Civ.P. 8(a)(2)."
<u>McTernan</u>, 564 F.3d at 658. However, "'[a] plaintiff is not

16

obligated to plead with special particularity the exact policies and practices that were in place, prior to taking any discovery into the alleged policies, and explain exactly how these precisely alleged policies caused or contributed to [an individual's] injuries.'" McIntyre v. Cty. of Delaware, 2019 WL 3934914, at *5 (E.D. Pa. Aug. 19, 2019).

In Tejada, 2018 WL 3688917, the Court declined to find a custom constituting the force of law because the plaintiff "makes no reference to any specific policy to support his allegations . . . [and] does not provide any evidence to show that these alleged customs are persistent and widespread beyond the standalone harm that he alleges he suffered." Id. at *6.

Here, Plaintiff alleges, inter alia, that "[t]hroughout Pepitone's tenure at the police department, there have been numerous sexually charged rumors circulating throughout the department," (Doc. No. 13 at 7; Doc. No. 9 ¶15); "[t]hese types of rumors have become part of an accepted sexually harassing and gender discriminatory culture within the police department . . . .," (Doc. No. 13 at 7; Doc. No. 9 ¶17); "[t]he police department has a practice and policy to discriminate against women, subject women to a sexually harassing and gender discriminatory hostile work environment and retaliate against anyone who complains about sexual harassment or sex discrimination," (Doc. No. 13 at 8; Doc. No. 9 ¶46); "McGrath knows about the rampant sexually

17

harassing, gender discriminatory and retaliatory conduct and has facilitated, approved, condoned or turned a blind eye to it for years," (Doc. No. 13 at 8. See also Doc. No. 9 ¶¶49, 51); and "McGrath knew or should have known that his subordinates' actions or omissions constituted illegal sexual harassment, gender discrimination or retaliation against females who complained about sexual harassment and gender discrimination," (Doc. No. 9 ¶53. See also Doc. No. 13 at 8). Like the allegations in McTernan, 564 F.3d 636, many of Plaintiff's allegations are merely assertions of entitlement to legal relief and lack the factual basis to support pleading a law, custom, or policy. See id. at 658 ("The complaint, which gives no notice as to the Defendants' improper conduct, simply alleges that McTernan's rights were violated 'due to the City's policy of ignoring First Amendment right[s.]' . . . . This is not sufficient.").

Plaintiff also claims that Lt. Polo, Sgt. Dougherty, and Sgt. Ruggierio told Plaintiff that "'this is how this place works' after she speak[sic] with multiple police department supervisors about the ongoing rumors about her . . . .'" (Doc. No. 13 at 7. See also Doc. No. 9 ¶18.) Additionally, Plaintiff alleges that there have been at least two prior – albeit old – lawsuits arising from the Township's treatment of female employees. (See Doc. No. 9 ¶51 ("McGrath had been named as a

defendant or was aware of prior gender discrimination/gender
hostile work environment claims brought by females against
LM/LMPD that alleged similar conduct as this case, including
Regan v. LMPD, et al., EDPa No. 98-2945 and Tucker v. LMPD, et
al., EDPa No. 02-1561.").) It appears that the complaint in
Regan v. Twp. of Lower Merion, 36 F. Supp. 2d 245 (E.D. Pa.
1999) was filed in 1998 and that the case was resolved in 2000.
The complaint in Tucker v. LMPD, et al., EDPa No. 02-1561 was
filed in 2002, and it appears that the case concluded in 2003.
Plaintiff brought the present lawsuit in 2019, more than fifteen
years later. (Doc. No. 9.) These allegations alone are
insufficient to support finding a custom under Monell, 436 U.S.
at 691. As in Tejada, 2018 WL 3688917, Plaintiff has not
specifically alleged a particular custom in support of her
claims or facts showing that the alleged custom is sufficiently
widespread. Thus, under Rule 12(b)(6), we find that Plaintiff
has not plausibly alleged a "law, custom, or policy" for
purposes of § 1983 liability against the Township.

## II. Claims Under § 1983 Against McGrath in His Individual Capacity

In her § 1983 claims against McGrath, Plaintiff argues that
McGrath violated Plaintiff's constitutional rights under the
Equal Protection Clause of the Fourteenth Amendment.
Specifically, Plaintiff contends "that McGrath is personally

19

liable under § 1983 because he failed to remedy sexually

harassing conduct directed toward Pepitone that he knew was

going on and turned a blind eye to, because he retaliated

against her by issuing her a performance improvement plan

because she complained about discrimination and harassment and

because of his gross negligence in supervising the supervisors

and police officers who sexually harassed Pepitone through their

constant rumor mills about Pepitone." (Doc. No. 13 at 17.)

Under the doctrine of qualified immunity, "executive

officials in general . . . . are shielded from liability for

civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a

reasonable person would have known." Harlow v. Fitzgerald, 457

U.S. 800, 807, 818 (1982).

A plaintiff alleging a violation of the Fourteenth

Amendment's Equal Protection Clause must allege a discriminatory

purpose underlying the violative conduct. Tucker v. Sch. Dist.

of Philadelphia, 2019 WL 3802066, at *5 (E.D. Pa. Aug. 13, 2019)

("Under the Fourteenth Amendment, no State shall "deny to any

person within its jurisdiction the equal protection of the

laws." U.S. Const. amend. XIV, § 1 . . . . A party making an

equal protection claim under § 1983 'must show intentional

discrimination against him because of his membership in a

particular class, not merely that he was treated unfairly as an individual.'").

### a. Claim Against McGrath for Issuing a Performance Improvement Plan

Plaintiff alleges that, because Plaintiff complained about sex discrimination and harassment, McGrath put Plaintiff on a "performance improvement plan." (Doc. No. 9 ¶¶38, 54; Doc. No. 13 at 17.) Relying on the Second Circuit case Vega v. Hempstead Union Free School District, 801 F.3d 72 (2nd Cir. 2016), Plaintiff argues that "[w]hen a supervisor retaliates against an employee because she complained about discrimination, the supervisor's retaliation violates the Equal Protection Clause." (Doc. No. 13 at 17.) However, in this jurisdiction, retaliation does not violate the Fourteenth Amendment's Equal Protection Clause. Oras v. City of Jersey City, 328 F. App'x 772, 775 (3d Cir. 2009) ("[A] pure or generic retaliation claim [ ] simply does not implicate the Equal Protection Clause.") (quoting Thomas v. Independence Twp., 463 F.3d 285, 298, n.6 (3d Cir.2006)) (internal quotations omitted) (alterations in original); Brennan v. City of Philadelphia, 2018 WL 4566134, at *6 (E.D. Pa. Sept. 21, 2018) ("Most other Circuits, including the Third Circuit, . . . have held that there is no authority for a retaliation claim under the Equal Protection Clause of the Fourteenth Amendment.").

Thus, we grant Defendants' Partial Motion to Dismiss as to McGrath's conduct of placing Plaintiff on a performance improvement plan.[1]

### b. Claim Against McGrath for Supervisory Liability

In order to succeed on a supervisory liability claim under § 1983, there must be "either a supervisor-subordinate relationship or a state law duty to control the actions of the primary actor." Jankowski v. Lellock, 649 F. App'x 184, 187 (3d Cir. 2016).

The Third Circuit has held that supervisory liability exists (1) when the defendant is a policymaker who, "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the plaintiff's] constitutional harm,'" Jones v. Pi Kappa Alpha Int'l Fraternity, Inc., 765 F. App'x 802, 810 (3d Cir. 2019) (alterations in original); or (2) when the defendant supervisor "'participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had

---

[1] Additionally, though it is unclear whether Plaintiff pleads § 1983 claims against McGrath in his personal capacity both for supervisory liability from participating in violating Plaintiff's constitutional rights and for garden-variety individual officer liability arising from that same conduct, we nevertheless need not address these claims separately because these claims are, or would be, redundant. See Williams v. Papi, 714 F. App'x 128, 134 (3d Cir. 2017) ("Thus, to the extent that he was found liable as a supervisor for his own participation in the alleged violations, that is redundant of his individual liability, and he is entitled to summary judgment on this claim.").

knowledge of and acquiesced in his subordinates' violations.'"
Id. See also Jankowski, 649 F. App'x at 187.

However, the Third Circuit has expressed doubt about
whether the "knowledge and acquiescence" theory of liability has
survived Ashcroft v. Iqbal, 556 U.S. 662 (2009). Jones, 765 F.
App'x at 810; Williams v. Papi, 714 F. App'x 128, 133 (3d Cir.
2017); Jankowski, 649 F. App'x at 187. Crucially, mere knowledge
is inadequate to establish supervisory liability, and a
supervisor must have personally participated in the conduct at
issue. Jones, 765 F. App'x at 810; Williams, 714 F. App'x at
133.

### i.    Policy-Maker Theory of Liability

As to the first theory of liability, Plaintiff merely
alleges that "it's undisputed that McGrath is a superintendent,
not a chief." (Doc. No. 13 at 17.) Plaintiff does not appear to
assert any factual allegations supporting the legal conclusion
that McGrath established or maintained a relevant law, custom,
or policy. Thus, we hold that Plaintiff has not established
supervisory liability under the first theory of liability.

### ii.    When a Supervisor "Directed Others to Violate . . . ."[2] Plaintiff's Rights

Plaintiff has not alleged any facts supporting the legal
conclusion that McGrath directed any subordinates to engage in

---

[2] Jones, 765 F. App'x at 810 (internal quotations omitted).

conduct violative of Plaintiff's Fourteenth Amendment rights under the Equal Protection Clause.

### iii.   When a Supervisor "Had Knowledge of and Acquiesced in His Subordinates' Violations"[3]

Plaintiff asserts that McGrath was aware of the alleged environment of sex discrimination and harassment because he "had been named as a defendant or was aware of prior gender discrimination/gender hostile work environment claims brought by females against LM/LMPD that alleged similar conduct as this case, including Regan v. LMPD, et al., EDPa No. 98-2945 and Tucker v. LMPD, et al., EDPa No. 02-1561." (Doc. No. 9 ¶51; Doc. No. 13 at 8.) However, as discussed previously, it appears that these two cases occurred over fifteen years before Plaintiff's lawsuit. See Regan v. Twp. of Lower Merion, 36 F. Supp. 2d 245 (E.D. Pa. 1999); Tucker v. LMPD, et al., EDPa No. 02-1561. (See also Doc. No. 9.) Even if the "knowledge and acquiescence" theory of liability survived Iqbal, Plaintiff's allegations are insufficient alone to show that McGrath had knowledge of or acquiesced in violations for purposes of supervisory liability under § 1983. See Williams, 714 F. App'x at 133, n.4. Accordingly, we grand Defendants' Partial Motion to Dismiss the § 1983 claim against McGrath on Count IV, and we grant leave to amend.

---

[3] Id.

## Conclusion

We deny Defendants' Rule 12(b)(6) Partial Motion to Dismiss as to Count II against the Township and as to Count III against the Township and McGrath. We grant, with leave to amend, the Defendants' Partial Motion to Dismiss as to Count VI against the Township and McGrath in his individual capacity. An appropriate Order follows.