**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JO ANNE PEPITONE, | CIVIL ACTION |
| Plaintiff, | |
| | |
| v. | |
| | |
| TOWNSHIP OF LOWER MERION and | NO.  19-1447 |
| MICHAEL J. MCGRATH, | |
| Defendants. | |

<u>**MEMORANDUM**</u>

**Joyner, J.**                                                    **August  10, 2020**

Presently before the Court is Defendants' Partial Motion to Dismiss Plaintiff's Third Amended Complaint Pursuant to F.R.C.P. 12(b)(6).  For the reasons which follow, the Motion will be granted.

## Factual Background

Plaintiff Jo Anne Pepitone, a police sergeant in Lower Merion, Pennsylvania, brings claims for violations of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e), <u>et seq.</u>; the Pennsylvania Human Relations Act, 43 P.S. § 951, <u>et seq.</u>; and the First and Fourteenth Amendments under 42 U.S.C. § 1983 for retaliation and sexual harassment and discrimination.  (Pl. Third Amended Complaint, Doc. No. 20¶¶1, 6, 11-12.)  Now facing Plaintiff's Third Amended Complaint ("TAC"), Defendants Township of Lower Merion ("LM") and police superintendent Michael J. McGrath, sued

1

in his individual capacity, move to dismiss Counts IV and V, which encompass Plaintiff's § 1983 claims. (Defs. Partial Motion to Dismiss Plaintiff's Third Amended Complaint Pursuant to F.R.C.P. 12(b)(6), Doc. No. 22 at 1; Doc. No. 20 ¶8.)

Plaintiff alleges that, during her tenure with LM, "there have been numerous sexually charged rumors circulating throughout the police department . . . . [that] have contributed to creating a sexually hostile and gender discriminatory hostile work environment," (Doc. No. 20 ¶15), including rumors that Plaintiff had "sexual relationships with her supervisors and members of neighboring police departments," (id. ¶16), and "was promoted because of a sexual relationship . . . with her supervisor . . . .", (id. ¶19). Plaintiff alleges that, when she spoke with LM employees about the rumors, she "was told 'that is how this place works.'" (Id. ¶18(s).) She argues that Defendants have condoned or ignored the rumors, (id. ¶17), and that Defendants were, or should have been, aware of the alleged discriminatory culture, (id. ¶¶17, 22). In addition, Plaintiff avers that LM launched a discriminatory investigation into whether she was having an inappropriate relationship with another officer, (id. ¶18(g), (n)), and that, "[s]hortly thereafter," LM transferred Plaintiff to a "less senior and less prestigious" platoon, (id. ¶18(p)), despite that Plaintiff was told that "she had done nothing wrong, this was not a discipline

2

matter and there were no policy violations," (id. ¶18(o)).
Plaintiff argues that her reassignment was punitive because
other officers have "had their platoon assignments changed . . .
[as a result of] performance deficiencies . . . ." (Id.
¶18(q).)  In contrast, Plaintiff alleges that LM did not
discipline a male officer for having a relationship with a
female subordinate.  (Id. ¶18(e).)

On April 3, 2018, Plaintiff alleges that she "emailed a
sexual harassment, discrimination and retaliation complaint to
McGrath, LM Manager Ernie McNeely and LM HR Manager Beth
Lilick." (Id. ¶23.)  Plaintiff reports that soon thereafter, on
April 23, 2018, she "received her first negative evaluation in
her 10 years at LM." (Id. ¶26.)  In support of her argument
that the negative evaluation was retaliation for her April
complaint, Plaintiff argues that her "evaluation period ended
February 23, 2018 . . . .", (id. ¶26), and that she received
this evaluation "much later than Pepitone typically received her
yearly evaluations," (id. ¶26).  Then, on May 5, 2018, Plaintiff
states that she filed a retaliation and sexual harassment
complaint with the EEOC.  (Id. ¶31.)  Plaintiff reports that LM
then investigated the claims underlying her April complaint.
(Id. ¶32-33.)  On October 25, 2018, Plaintiff avers that she met
with McGrath and LM's Manager, Assistant Manager, and Director
of HR to discuss the results of LM's investigation into her

3

April complaint.  (Id. ¶35.)  During this meeting, Plaintiff states that LM reported that six people would face disciplinary action for violating LM policy and told her that LM would "implement a no fraternization policy" and "look into advanced harassment/workplace training."  (Id. ¶¶32-37, 41.)  During this same meeting, Plaintiff also asserts that McGrath told her that "she was being placed on a performance improvement plan . . . ."  (Id. ¶38.)  Plaintiff states that, to her knowledge, LM has not disciplined the six employees or instituted advanced harassment or workplace training.  (Id. ¶41.)

Plaintiff seeks compensatory damages, attorney fees, costs, interest, and injunctive and declaratory relief, as well as punitive damages against McGrath.  (Id. ¶¶1, 79, 83.)

## Discussion

### Jurisdiction

Subject-matter jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343(a).  28 U.S.C. §§ 1331, 1343(a).  (See also Doc. No. 20 ¶2.)  This Court has personal jurisdiction over Defendants, as Defendants have consented to personal jurisdiction by litigating the merits without contesting personal jurisdiction.  In re Asbestos Prod. Liab. Litig. (No. VI), 921 F.3d 98, 105 (3d Cir. 2019).

Legal Standards

Under Fed. R. Civ. P. 12(b)(6), "[t]he Court may grant a motion to dismiss for failure to state a claim upon which relief can be granted . . . if, 'accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief.'" Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007).  In determining motions to dismiss for failure to state a claim, Courts should consider only "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010). See also Witasick v. Minnesota Mut. Life Ins. Co., 803 F.3d 184, 192 (3d Cir. 2015).  To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain sufficient factual matter accepted as true "to state a claim that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Courts are to take as true all of the factual allegations in the complaint and the reasonable inferences that can be drawn from those facts. Witasick, 803 F.3d at 192; Ethypharm S.A. Fr. v. Abbott Laboratories, 707 F.3d 223, 225 n.1 (3d Cir. 2013).  Lastly, Courts should disregard "legal conclusions and '[t]hreadbare

5

recitals of the elements of a cause of action, supported by mere
conclusory statements . . . ." Ethypharm, 707 F.3d at 231 n.14.
Additionally, Fed. R. Civ. P. 8(a)(2) mandates that "[a]
pleading that states a claim for relief must contain . . . . a
short and plain statement of the claim showing that the pleader
is entitled to relief . . . ." Id. See also Rosh v. Gold
Standard Café at Penn, Inc., 2016 WL 7375014, at *2 (E.D. Pa.
Dec. 19, 2016).

Count IV - Claims Under § 1983 and the Equal Protection Clause
of the Fourteenth Amendment Against Defendants LM and McGrath

At the outset, we emphasize a few underlying principles.
Municipalities are not liable simply due to an injury inflicted
by one of their employees, Monell v. Dep't of Soc. Servs. of
City of New York, 436 U.S. 658, 694 (1978), and municipalities
have no immunity of their own, Owen v. City of Indep., Mo., 445
U.S. 622, 638 (1980). See also Connick v. Thompson, 563 U.S.
51, 60 (2011). State executive officials receive qualified
immunity for conduct that "does not violate clearly established
statutory or constitutional rights of which a reasonable person
would have known." Harlow v. Fitzgerald, 457 U.S. 800, 807, 818
(1982). See also Mann v. Palmerton Area Sch. Dist., 872 F.3d
165, 170, 172 (3d Cir. 2017), as amended (Sept. 22, 2017).
Additionally, a plaintiff must allege a discriminatory purpose
in order to succeed on a Fourteenth Amendment Equal Protection

Clause claim. Tucker v. Sch. Dist. of Philadelphia, 2019 WL 3802066, at *5 (E.D. Pa. Aug. 13, 2019). We also note that we previously dismissed Plaintiff's Fourteenth Amendment claims in her First Amended Complaint under Rule 12(b)(6). See Pepitone v. Twp. of Lower Merion, 2019 WL 7020142, at *5 (E.D. Pa. Dec. 19, 2019).

## I.  Claims against Defendant LM

Plaintiff argues that LM faces liability for failing to train its employees, (Doc. No. 20 ¶¶50-51), and because its employees acted pursuant to its unconstitutional law, custom, or policy, (Plaintiff's Response to Defendants' Partial Motion to Dismiss Her Second Amended Complaint, Doc. No. 23 at 12-13).

### a. Liability Arising from a Law, Custom, or Policy

As we articulated in our previous opinion, local governments may be liable under § 1983 when execution of the entity's law, custom, or policy inflicts a cognizable injury. Connick, 563 U.S. at 60; Monell, 436 U.S. at 694; Mann, 872 F.3d at 174; Pepitone, 2019 WL 7020142, at *5. Specifically, a local government is liable under § 1983 when: (1) its employee's conduct was pursuant to the locality's law, custom, or policy; (2) its employee's conduct was unconstitutional or violative of a right under a federal statute; and (3) that law, custom, or policy was unconstitutional or otherwise violative of a right under a federal statute. Monell, 436 U.S. at 690-91, 694;

Pepitone, 2019 WL 7020142, at *6.  A law, custom, or policy need not be written or formal.  See Monell, 436 U.S. at 690-91.  As the Supreme Court explained, a municipality's law, custom, or policy "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 563 U.S. at 61.  Before discovery, the plaintiff need not "plead with special particularity the exact policies and practices that were in place . . . and explain exactly how these precisely alleged policies caused or contributed to [an individual's] injuries." McIntyre v. Cty. of Delaware, 2019 WL 3934914, at *5 (E.D. Pa. Aug. 19, 2019) (internal quotations omitted).  See also Pepitone, 2019 WL 7020142, at *6.  However, as we emphasized in our previous opinion, a "[m]ere assertion of an entitlement to relief, without some factual 'showing,' is insufficient under Fed. R. Civ. P. 8(a)(2)." McTernan v. City of York, PA, 564 F.3d 636, 658 (3d Cir. 2009).  See also Pepitone, 2019 WL 7020142, at *6-7.  In our prior opinion, we relied on recent precedent where the Court declined to find a custom under § 1983 because the plaintiff did not show that the alleged law, custom, or policy was "persistent and widespread beyond the standalone harm that he alleges he suffered." Tejada v. Corr. Officer Dale of Lehigh Cty. Prison, 2018 WL 3688917, at *6 (E.D. Pa. Aug. 3, 2018).  See also Pepitone, 2019 WL 7020142,

at *6.   We then held that Plaintiff did not allege sufficient
facts to support a law, custom, or policy of gender
discrimination.   <u>Pepitone</u>, 2019 WL 7020142, at *6-7.   In the TAC
at issue now, Plaintiff has failed to add any factual
allegations that could plausibly establish a law, custom, or
policy; instead, she has only added legal conclusions devoid of
facts.   (<u>See</u> Doc. No. 20.)   Because Plaintiff has not added
anything substantial to support her claim that LM is liable for
its employees acting pursuant to an unconstitutional law,
custom, or policy, we grant Defendant's Motion as to this claim.

### b. *Liability Arising from Failure to Train Employees*

Additionally, Plaintiff argues that "the sexually harassing
and gender demeaning conduct against females, including her, has
been rampant throughout the police department for years, and the
police department's Command Staff . . . has known about the
conduct, failed to remedy it, turned a blind eye and . . .
allowed these customs and practices of the police department to
be so common that they have the force of law." (Doc. No. 23 at
13.)   She alleges that "[i]t is the custom, practice or policy
of LM to . . . encourage and allow gender discriminatory and
sexually harassing behavior by refusing to discipline those who
engage in such conduct and failing to conduct effective training
on bias, gender discrimination, sexual harassment, reporting and
investigating claims of gender discrimination or sexual

harassment." (Doc. No. 20 ¶47.) We understand her TAC to assert a claim that LM is liable for failing to train its employees.

At the outset, we note that failure to train claims are difficult to establish, as "proving that a municipality itself actually caused a constitutional violation by failing to train the offending employee presents difficult problems of proof, and we must adhere to a stringent standard of fault, lest municipal liability under § 1983 collapse into respondeat superior." Connick, 563 U.S. at 70 (internal quotations omitted). In order to establish a failure to train claim, the plaintiff must show that the locality's failure to train its employees meets the "stringent" standard of "deliberate indifference" to the plaintiff's rights. Id. at 61 (internal quotations omitted). In order to establish deliberate indifference, the plaintiff generally must show that the municipality had "actual or constructive notice" of a "particular omission" in its training that causes its employees to inflict cognizable harm. Id. If the city had notice, then the city has effectively "'deliberately chosen a training program that will cause violations of constitutional rights.'" Mann, 872 F.3d at 175 (quoting Connick, 563 U.S. at 62). Generally, to establish notice, the plaintiff must show "a pattern of similar constitutional violations by untrained employees . . . ."

10

Connick, 563 U.S. at 61–62.  However, in rare circumstances, a
single violation can suffice.  Id. at 63.  While Plaintiff does
not explicitly state which theory, or both, her failure to train
claim rests on, (Doc. Nos. 20, 23), her TAC appears to indicate
that her theory of liability arises from repeated instances of
employee misconduct, so we treat her failure to train claim as
one based on a pattern of similar unconstitutional conduct.
(See Doc. No. 20 ¶¶47, 50–51.)

        In her TAC, Plaintiff points to two prior lawsuits
ostensibly brought against LM and McGrath.  (Id. ¶58.)  As we
observed in our previous opinion, Plaintiff began her instant
lawsuit in 2019, over twenty years after the complaint in Regan
was filed and approximately seventeen years after the Tucker
complaint was filed.  Pepitone, 2019 WL 7020142, at *7; Tucker
v. LMPD, et al., E.D. Pa. No. 02–1561; Regan v. Twp. of Lower
Merion, 36 F. Supp. 2d 245 (E.D. Pa. 1999).  Plaintiff does not
appear to explicitly argue that these prior lawsuits put LM on
notice that the training in place at that time was deficient in
a way that could establish deliberate indifference under a
failure to train theory.  However, even assuming that those
lawsuits could have provided notice that LM's training program
was deficient seventeen years ago, Plaintiff's TAC contains no
indication that conduct or deficiencies in LM's training
seventeen years ago could, without more, put LM on notice of

deficiencies in its current training program.  (See Doc. No. 20
¶¶36-37.)  Further, Plaintiff's own experiences are insufficient
alone to establish a pattern of conduct because it appears from
Plaintiff's TAC that the harassment against her stopped after
she emailed her April complaint to LM.  (Id. ¶¶23-41; Doc. No.
23 at 13.)  Thus, Plaintiff has not sufficiently alleged a
pattern of similar conduct or that harassment occurred after LM
had notice of the alleged harassment.  Because Plaintiff has not
shown "the functional equivalent of a decision by the city
itself to violate the Constitution," Connick, 563 U.S. at 72
(internal quotations omitted), her TAC does not indicate the
deliberate indifference required for failure to train claims.
Accordingly, we grant Defendants' Motion as to Plaintiff's §
1983 claim against LM for failure to train.

**II.  Claims Against Defendant McGrath**

     Plaintiff brings § 1983 claims against McGrath in his
personal capacity for "supervisory and individual liability" for
violations of the Fourteenth Amendment's Equal Protection
Clause.  (Doc. No. 23 at 9.  See also Doc. No. 20 ¶¶77-78.)
Plaintiff asserts that McGrath is liable because he
"participated in violating her rights, directed others to do so
or as the top ranking police officer in the Township's police
department he had knowledge or [sic] and acquiesced in the
violation of Pepitone's rights." (Doc. No. 23 at 9.)  She also

argues that McGrath is liable because, "with deliberate indifference to the consequences, [he] established and maintained a policy, custom or practice which directly caused the constitutional harm to Pepitone." (Id.)

We first address the merits of Plaintiff's claims.  As we explained in our previous opinion, to succeed on a § 1983 supervisory liability claim, there must be "either a supervisor-subordinate relationship or a state law duty to control the actions of the primary actor." Jankowski v. Lellock, 649 F. App'x 184, 187 (3d Cir. 2016).  See also Pepitone, 2019 WL 7020142, at *8-9.  First, supervisory liability arises when the defendant supervisor "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." Jones v. Pi Kappa Alpha Int'l Fraternity, Inc., 765 F. App'x 802, 810 (3d Cir. 2019) (internal quotations omitted). See also Jankowski, 649 F. App'x at 187.  However, the Third Circuit has expressed doubt about whether the "knowledge and acquiescence" theory of liability has survived Iqbal. Jones, 765 F. App'x at 810; Williams v. Papi, 714 F. App'x 128, 133 (3d Cir. 2017); Jankowski, 649 F. App'x at 187. Crucially, the supervisor must have personally participated in the conduct at issue, and mere knowledge is insufficient to establish supervisory liability.  Jones, 765 F. App'x at 810;

Williams, 714 F. App'x at 133.  Second, supervisory liability

also exists when the defendant is a policymaker who, "with

deliberate indifference to the consequences, established and

maintained a policy, practice or custom which directly caused

[the plaintiff's] constitutional harm."  Jones, 765 F. App'x at

810 (alterations in original) (internal quotations omitted).

> ### a. *Whether McGrath Participated in Violating Plaintiff's Rights, Directed Others to Violate Her Rights, or Had Knowledge of or Acquiesced in Subordinates' Violations*

We previously found that Plaintiff failed to put forth

sufficient facts showing that McGrath participated in violating

Plaintiff's rights, directed others to violate her rights, or

had knowledge of or acquiesced in the alleged violations by his

subordinates.  Pepitone, 2019 WL 7020142, at *8-9.  In her TAC,

Plaintiff has not set forth any additional facts indicating that

McGrath participated in harassing her or directed others to

violate her rights.  (See Doc. No. 20; Doc. No. 23 at 11.)

Additionally, even if the knowledge and acquiescence theory

still exists, Plaintiff cannot establish liability under this

theory because she has not asserted any additional relevant

facts in support.  (See Doc. Nos. 20, 23.)  Thus, to the extent

that Plaintiff makes any claim that McGrath personally

participated in violating her Fourteenth Amendment rights,

directed others to engage in conduct unconstitutional under the

Fourteenth Amendment, or had knowledge of or acquiesced in such conduct, we grant Defendants' Motion.

### b. *Policymaker Liability*

Plaintiff has not added any facts that would suggest a widespread practice amounting to a law, custom, or policy, rather than events unique to Plaintiff. (<u>See</u> Doc. No. 20.)  On these grounds, we again deny her claim against McGrath for liability as a policymaker who established an unconstitutional law, custom, or policy.

### c. *Retaliation under the Fourteenth Amendment*

Plaintiff contends that McGrath retaliated against her in violation of the Fourteenth Amendment for her complaints about discrimination. (Doc. No. 23 at 11.)  However, as we explained in our prior opinion, retaliation does not implicate the Fourteenth Amendment's Equal Protection Clause in this jurisdiction.  <u>Oras v. City of Jersey City</u>, 328 F. App'x 772, 775 (3d Cir. 2009); <u>Thomas v. Independence Twp.</u>, 463 F.3d 285, 298 n.6 (3d Cir. 2006); <u>Brennan v. City of Philadelphia</u>, 2018 WL 4566134, at *6 (E.D. Pa. Sept. 21, 2018).  <u>See also</u> <u>Pepitone</u>, 2019 WL 7020142, at *7.  Thus, we grant Defendants' Motion as to Plaintiff's claim against McGrath for retaliation under the Fourteenth Amendment.

Count V – § 1983 Claim for First Amendment Retaliation Against
Defendants LM and McGrath

Plaintiff contends that her April and May complaints about gender discrimination and sexual harassment at LM are matters of public concern and that, as a result of her complaints, Defendants issued Plaintiff a performance improvement plan and a negative performance evaluation. (Doc. No. 20 ¶82.)  In their Motion, Defendants contend that Plaintiff's April complaint to McGrath, LM Manager, and LM HR Manager is a matter of private concern, not public concern, and, thus, cannot serve as the basis for a First Amendment retaliation claim. (Doc. No. 22 at 16-17.  See also Doc. No. 20 ¶23.)[1]

We apply the framework for public employee speech because Plaintiff and Defendants both represent that Plaintiff is a public employee for purposes of her First Amendment retaliation claim. (Doc. No. 22 at 17-19; Doc. No. 23 at 14).  See also Falco v. Zimmer, 767 F. App'x 288, 299 (3d Cir. 2019).  In order to a establish a claim for First Amendment retaliation, "a public employee must show that (1) his [activity] is protected by the First Amendment and (2) the [activity] was a substantial or motivating factor in the alleged retaliatory action, which,

---

[1] Defendants do not appear to address in their Motion or Reply Plaintiff's claim of retaliation for her May complaint.  (See Doc. No. 22; Reply Brief in Support of Defendants' Partial Motion to Dismiss Plaintiff's Third Amended Complaint Pursuant to F.R.C.P. 12(b)(6), Doc. No. 24.)  Thus, our First Amendment retaliation analysis is limited to Plaintiff's April complaint.

if both are proved, shifts the burden to the employer to prove
that (3) the same action would have been taken even if the
[activity] had not occurred." Falco, 767 F. App'x at 299
(alteration in original) (internal quotations omitted).

I.   **Whether the First Amendment Protects Plaintiff's Activity**

     In order to establish the first factor – that the First
Amendment protects the activity in question – Plaintiff must
show that: "(1) in making it, the employee spoke as a citizen[;]
(2) the statement involved a matter of public concern[;] and (3)
the government employer did not have an adequate justification
for treating the employee differently from any other member of
the general public as a result of the statement he made."
Falco, 767 F. App'x at 300 (alterations in original) (internal
quotations omitted).  See also Borough of Duryea, Pa. v.
Guarnieri, 564 U.S. 379, 398 (2011).  Even if an employee speaks
as a citizen on a matter of public concern, the Court must weigh
the employee's First Amendment interest against the public
employer's interest in efficiency.  Guarnieri, 564 U.S. 379, 386
(2011); Middleton v. Deblasis, 844 F. Supp. 2d 556, 564 n.4
(E.D. Pa. 2011).

          a. **Whether Plaintiff's Statement Involved a Matter of**
             **Public Concern**

     Defendants contend that Plaintiff's April complaint
"involved a petition about matters of purely private concern:

discrimination and retaliation against Plaintiff," (Doc. No. 22 at 18), and was merely about personal grievances inflicted by coworkers, (id. at 17–18).

A public employee's activity regarding issues of public concern is protected by the First Amendment, but speech and petitions about issues of private concern are unprotected.[2] Falco, 767 F. App'x at 302; Middleton, 844 F. Supp. 2d at 565. Courts in this jurisdiction have considered a litany of factors when deciding whether a public employee's speech or petition constitutes a matter of public concern and "have carefully resisted the temptation to adopt controlling distinctions as to whether a public employee's speech is speech of a public concern." Fryer v. Noecker, 34 F. App'x 852, 853–54 (3d Cir. 2002) (internal quotations omitted). Importantly, Courts consider the petition's "content, form, and context" in determining whether the petition relates "to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest . . . ." Falco, 767 F. App'x at 302 (internal quotations omitted). See also Guarnieri, 564 U.S. at 398; Fender v. Delaware Div. of Revenue, 628 F.

---

[2] Defendants argue that Plaintiff's claims arise under the First Amendment's Petition Clause, and Plaintiff does not dispute this. (Id. at 18; Doc. No. 23 at 14–15.) Though Courts should not assume that the First Amendment's Petition Clause and Speech Clause are always equivalent, the Speech Clause's public concern requirement applies to claims under the Petition Clause. Guarnieri, 564 U.S. at 388–89, 398; Middleton, 844 F. Supp. 2d at 565.

App'x 95, 97 (3d Cir. 2015); Middleton, 844 F. Supp. 2d at 565.

Activity is not of public concern if it pertains only to

"mundane employment grievances." Falco, 767 F. App'x at 302

(internal quotations omitted).  See also Fender, 628 F. App'x at

98; Middleton, 844 F. Supp. 2d at 565.  Courts should not

"cherry pick something that may impact the public while ignoring

[its] manner and context . . . ." Falco, 767 F. App'x at 302-03

(alteration in original) (internal quotations omitted).  If

activity concerning only the employee's personal matters

"brush[es] ever so gently against a matter of public concern by

virtue of that employee's public employment, then that speech is

merely a personal grievance." Id. (internal quotations

omitted).  However, "matters are not disqualified from being

matters of public concern simply because they touch on

individuals and their desires." Fryer, 34 F. App'x at 853.

When evaluating First Amendment retaliation claims under §

1983 stemming from instances of harassment, an important factor

is whether the underlying alleged harassment was committed by

someone acting in a supervisory position over the employee.

Zelinski v. Pennsylvania State Police, 108 F. App'x 700, 703 (3d

Cir. 2004).  Rather than requiring a formal supervisory role,

the Court should ask: "1) whether the defendant could alter the

plaintiff's workload, and 2) whether the plaintiff would face

charges of insubordination for failure to obey the defendant's order."  Id. at 708.

Further, when adjudicating instances where a public employee's speech consisted of reporting harassment towards the employee, Courts focus on whether the complaints merely addressed grievances personal to the speaker or whether the complaints encompassed broader concerns.  Fender, 628 F. App'x at 97-98; Goodall-Gaillard v. N.J. Dep't of Corr., 625 F. App'x 123, 125-27 (3d Cir. 2015); Goodall-Gaillard v. New Jersey Dep't of Corr., 2014 WL 2872086, at *28-29 (D.N.J. June 24, 2014), aff'd sub nom. 625 F. App'x 123 (3d Cir. 2015).  While not dispositive, Courts consider whether the alleged conduct pertains to the performance of elected officials.  Zelinski, 108 F. App'x at 708; Middleton, 844 F. Supp. 2d at 564.

In Zelinski, a public employee complained to a supervisor that another employee without supervisory control over her sexually harassed her, and the supervisor then allegedly retaliated against the employee due to her complaint.  Zelinski, 108 F. App'x at 702, 708.  Importantly, the employee did not allege sexual harassment by someone with supervisory control over her, and neither the alleged harasser nor the supervisor "work[ed] directly under any elected official."  Id. at 708. Accordingly, the Third Circuit held that the employee's activities "do not appear relevant to the electorate's

evaluation of the performance of the office of any elected official," id., and that the employee's complaint had "little or no instrumental value to the community in enabling self-governance . . . and thus does not appear to have addressed a matter of sufficient public concern to warrant First Amendment protection," id. (internal quotations omitted.)

Here, Defendants contend that Plaintiff's retaliation claim stems from alleged sexual harassment committed by Plaintiff's coworkers.  (Doc. No. 22 at 17.)  While Plaintiff's TAC contains several allegations of sexual harassment, it does not appear to indicate whether any of the alleged harassers exercised supervisory control over Plaintiff.  (Doc. No. 20.) Additionally, although not dispositive, Plaintiff's TAC appears to contain no indication that the sexual harassment reflected on the conduct of any elected official.  (Id.)  Thus, Plaintiff's April complaint is analogous to Zelinski and likewise has "little or no instrumental value to the community in enabling self-governance . . . ."  Zelinski, 108 F. App'x at 708 (internal quotations omitted).  Accordingly, even drawing reasonable inferences in Plaintiff's favor, we find that Plaintiff has not sufficiently alleged that her April complaint was a matter of public concern.  Thus, we grant Defendants' Motion as to Count V on her April complaint.

## <u>Conclusion</u>

For all of the foregoing reasons, we grant Defendants' Partial Motion to Dismiss Plaintiff's Third Amended Complaint Pursuant to F.R.C.P. 12(b)(6).  An Order follows.